# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| RYAN JAMES JOHNSON, | Case No. 1:17-cv-01159-SAB (PC) |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FROM THIS ACTION |
| v. | |
| K. GRAVES, et al., | (ECF No. 9) |
| Defendants. | |

Plaintiff Ryan James Johnson is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's first amended complaint, filed October 2, 2017.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is currently housed at the California Correctional Institution, Tehachapi. On November 18, 2016, Plaintiff was being transferred from California State Prison, Corcoran to Salinas Valley State Prison. (First Am. Compl. ("FAC") 3,[1] ECF No. 9.) Plaintiff was escorted to his cell at 4:00 a.m. to Receiving and Release and after about an hour the transportation bus arrived. (FAC 3-4.)

Three transportation officers, Sergeant C. Bishipe, K. Graves, and an unidentified officer conducted the transfer. (FAC 4.) Plaintiff was instructed to walk through a metal detector and approach the door of the bus. (FAC 4.) Plaintiff stood facing the officers and looking to the side while the transportation officer placed waist chains around Plaintiff's abdomen. (FAC 4.) Plaintiff was instructed to place his wrists inside the handcuffs that were attached to the waist

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

chain. (FAC 4.) The transportation officer tightened the hand cuffs to the gauge at Plaintiff's waist and proceeded to engage the safety locks. (FAC 4.)

When the transportation officer engaged the safety lock on the left handcuff the pin clicked and was properly engaged. (FAC 4.) However, when the transportation officer attempted to engage the right handcuff he was unable to get the lock to engage. (FAC 4.) After making several unsuccessful attempts to engage the lock, the transportation officer told Plaintiff to "be careful" because the safety lock had not engaged and the handcuff could still be tightened. (FAC 4-5.) Plaintiff boarded the bus. (FAC 5.) A third officer cuffed ankle chains around Plaintiff's ankles and he took a seat on the bus. (FAC 5.)

One of the transportation officers instructed the inmate passengers that there was to be no talking while the bus was moving, the restroom was available for urination purposes only, and if there were any problems the culprit's property would "accidently" fail to leave the bus with the inmate when he got off the bus. (FAC 5.) The bus stopped at the adjacent Substance Abuse Treatment Facility to drop off and pick up inmates. (FAC 5.) A half hour stop was also made in Corcoran. (FAC 5.)

Shortly after starting the three hour transport, Plaintiff needed to use the restroom. (FAC 6.) As Plaintiff was returning to his seat the bus downshifted and Plaintiff lost his balance. (FAC 6.) Plaintiff fell into the restroom wall petition and the full force of his body fell onto the unsecured handcuff causing it to tighten. (FAC 6.) Plaintiff informed Transportation Officer Graves that when he fell the handcuff tightened and it was causing him pain. (FAC 6.) Transportation Officer Graves told Plaintiff that there was nothing he could do as the bus was moving and they would not stop to loosen his handcuff. (FAC 6-7.)

Plaintiff took his seat and endured several hours of pain coupled with tingling and a numbing sensation. (FAC 7.) Plaintiff's hand turned from red, to purple, to blue over a half hour. (FAC 7.) Plaintiff informed Transportation Officer Graves of the severity of his injury, but Transportation Officer Graves explained that once the bus was moving it would not stop unless there was a serious emergency. (FAC 7.) Plaintiff stated that this was a serious emergency and Transportation Officer Graves became agitated suggesting that Plaintiff shut-up

unless he wanted his property to stay on the bus when he got off. (FAC 7.) Plaintiff decided to remain quiet and endure the pain in fear that if he continued to complain he would lose his property. (FAC 7.)

Upon arrival at SVSP, Plaintiff was removed from the bus and unshackled by Sergeant Bishipe. (FAC 7.) Plaintiff showed Sergeant Bishipe that his right cuff had been tight, the bluish tinge of his hand, and the bruising that had developed on his right wrist. (FAC 7.) As the handcuffs were removed, the bluish tinge began to fade and Plaintiff's hand returned to its normal color. (FAC 7-8.) Plaintiff told Sergeant Bishipe of the pain he felt, the tingling sensation that he was experiencing, and that he had a numbing sensation between the knuckle of his index and middle fingers. (FAC 8.) Sergeant Bishipe told Plaintiff that his hand and wrist appeared consistent with the normal application of that type of handcuff and to inform medical staff if he deemed it necessary. (FAC 8.)

Plaintiff was escorted to the holding tank and after about ten minutes gained the attention of Nurse W. Guanco. (FAC 8.) Plaintiff informed Nurse Guanco of the injury to his wrist and hand and she confirmed that there was significant bruising around his right wrist. (FAC 8.) Plaintiff continued to experience pain, numbing between his knuckles, tingling sensations, and his wrist began making a clicking/popping sound with pain. (FAC 8.) Nurse Guanco completed forms and advised Plaintiff to fill out and submit a health care request form when he arrived at his housing unit. (FAC 8.)

The following day, on November 19, 2016, Plaintiff submitted a health care request form. (FAC 9.) He was scheduled for an appointment on November 22, 2016, which was cancelled. (FAC 9.) On November 25, 2016, Plaintiff submitted a second health care request form and was seen a few days later. (FAC 9.) Plaintiff was evaluated and it was determined that x-rays were necessary and Plaintiff was scheduled for x-rays. (FAC 9.) Plaintiff received x-rays the following day and was informed by the radiologist that he would automatically be scheduled for an appointment with his primary care physician. (FAC 10.)

On December 30, 2016, Plaintiff submitted a third health care request form. (FAC 10.) On January 11, 2017, Plaintiff was seen and evaluated by Nurse C. Villanueva. (FAC 10.)

Plaintiff explained to Nurse Villanueva how he had been injured and that his wrist constantly ached throughout the day and had begun making a clicking/popping sound, tingled, and was more difficult for him to use. (FAC 10.) Nurse Villanueva told Plaintiff that she did not think his symptoms were serious enough to see his primary care physician and she would not refer him. (FAC 10.) Plaintiff told Nurse Villanueva that his pain was chronic and hindered his ability to function. (FAC 10.) Nurse Villanueva told Plaintiff that the medical care for his wrist "ends here." (FAC 10-11.)

Plaintiff continued to have pain, clicking, and restricted mobility so he filed a health care appeal. (FAC 11.) Plaintiff's appeal was partially granted at the first level; and he was provided with an appointment with his primary care physician. (FAC 11.) On March 21, 2017, Plaintiff was seen by his primary care physician who opined, without consulting any imaging, that Plaintiff was experiencing "superficial nerve damage." (FAC 11.) The physician explained that Plaintiff would most likely have some form of permanent immobility and would likely experience chronic aches and pain for at least a year. (FAC 11.) Plaintiff was prescribed ibuprofen and referred to physical therapy to increase his mobility. (FAC 11.)

Plaintiff brings this action against Transportation Officer Graves alleging excessive force and Nurse Villanueva alleging denial of medical care in violation of the Eighth Amendment. (FAC 3, 9.) Plaintiff is seeking monetary damages. (FAC 12.)

### III.

### DISCUSSION

#### A. Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

2006) (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128.

### 1. Conditions of Confinement

Plaintiff brings a claim against Transportation Officer Graves alleging excessive force in violation of the Eighth Amendment. The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). However, Plaintiff's complaint is devoid of allegations that Transportation Officer Graves used force on Plaintiff. Based on the allegations in the complaint, Plaintiff is alleging a conditions of confinement claim.

Where an inmate is challenging the conditions of confinement he must show there was a deprivation "sufficiently serious" to form the basis of a violation and "the prison official acted "with a sufficiently culpable state of mind." Johnson, 217 F.3d at 731 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

Plaintiff alleges that he informed Transportation Officer Graves that his handcuffs had tightened and were causing him pain, tingling, and numbness and that Transportation Officer

Graves failed to adequately respond. Further, Plaintiff alleges that due to the failure to respond he was subjected to the painful conditions for several hours and suffered nerve damage to his wrists. The first amended complaint states a cognizable claim that Transportation Officer Graves was deliberately indifferent to Plaintiff's conditions of confinement in violation of the Eighth Amendment.

2. <u>Denial of Medical Care</u>

Plaintiff also alleges that Nurse Villanueva violated the Eighth Amendment by refusing to refer him to his primary care physician for his wrist injury. While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm</u>, 680 F.3d at 1122; <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," <u>Simmons v. Navajo County Ariz.</u>, 609 F.3d 1011, 1019 (9th Cir. 2010); <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

Here, Plaintiff alleges that Nurse Villanueva evaluated him several months after he was injured and told him that his symptoms were not serious enough to see his primary care physician. Nurse Villanueva informed Plaintiff that she would not refer him to his primary care physician for every ache and pain. While Plaintiff wanted to be referred to his primary care physician, "[a] difference of opinion between a physician and the prisoner—or between medical

7

professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson, 90 F.3d at 332). The failure to refer Plaintiff to his primary care physician is insufficient to state a cognizable claim for denial of medical care.

Plaintiff alleges that Nurse Villanueva examined his wrist and determined that the injury was not severe. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope."). The failure to properly diagnose Plaintiff's injury is insufficient to state a claim for deliberate indifference.

Plaintiff has failed to state a cognizable claim that Nurse Villanueva was deliberately indifferent to his serious medical needs.

**B.     Joinder**

Finally, a basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the

required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

In other words, all claims in the complaint must be permitted by either Rule 18 or Rule 20. A plaintiff may state a single claim against a single defendant and may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). .

Here, the denial of medical care claim against Nurse Villanueva is not related to the condition of confinement claim stated against Transportation Officer Graves. While Plaintiff contends that the wrist injury was because Transportation Officer Graves failed to loosen his handcuffs, the claims are not part of the same "transaction, occurrence, or series of transactions." Further, there are not common questions of law or fact in regards to these claims. Although the fact that Plaintiff alleged an injury to his wrist would be raised in a lawsuit against Nurse Villanueva, the facts of how his wrist was injured are not necessary to presentation of Plaintiff's denial of medical care claims. If Plaintiff wishes to proceed on his claims against Nurse Villanueva he must raise them in a separate lawsuit.

The Court finds that Plaintiff's claims are improperly joined in this action and recommends that the claims against Nurse Villanueva be dismissed without leave to amend.

**IV.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, Plaintiff has stated a claim against Transportation Officer K. Graves for deliberate indifference to his conditions of confinement in violation of the Eighth Amendment, but fails to state any other cognizable claims. Further, Plaintiff's claims against Nurse Villanueva are improperly joined in this lawsuit.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claim against Transportation Officer K. Graves for deliberate indifference to his conditions of confinement in violation of the

|   |    | Eighth Amendment; |
|---|----|---|
| 2. | | All other claims against Transportation Officer K. Graves be dismissed for failure to state a claim; |
| 3. | | The claims against Nurse Villanueva be dismissed from this action without leave to amend for failure to state a claim; and |
| 4. | | The Office of the Clerk is directed to randomly assign this matter to a district judge. |

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 13, 2017**

UNITED STATES MAGISTRATE JUDGE